**Robert BYE, Petitioner-Appellant,**

v.

**UNITED STATES of America,
Respondent-Appellee.**

**No. 832, Docket 34375.**

United States Court of Appeals,
Second Circuit.

Argued May 21, 1970.

Decided Oct. 14, 1970.

Guy Miller Struve, New York City, for petitioner-appellant.

Elliot G. Sagor, Asst. U. S. Atty., (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of N. Y., Maurice M. McDermott, Asst. U. S. Atty. on the brief), for respondent-appellee.

Before SMITH and HAYS, Circuit Judges, and TENNEY,* District Judge.

**J. JOSEPH SMITH, Circuit Judge:**

This appeal raises the question whether a person accused of a narcotics offense who pleads guilty to that offense, without knowledge that he will be ineligible for parole from the sentence he receives, enters his guilty plea voluntarily with an understanding of the consequences of the plea. We conclude that he does not.

Appellant Bye, along with a co-defendant, was indicted in 1966 on two counts under the narcotics laws, 21 U.S.C. §§ 173, 174. Desiring to change his plea to guilty, he was brought before Judge Tyler of the District Court for the Southern District of New York on November 29, 1966. Judge Tyler asked Bye a series of questions to insure that he knew the effects of his plea,[1] and that he entered the plea freely and willingly without any promises or threats. Although Judge Tyler informed Bye that he could receive from five to twenty years imprisonment on each count, he did not tell Bye that he would not be eligible for parole from his sentence due to section 7237(d) of the Internal Revenue Code, 26 U.S.C. § 7237(d), which makes narcotics offenders ineligible. Parole is generally available to a prisoner after serving one third of his sentence. 18 U.S.C. § 4202.

Judge Tyler accepted Bye's plea of guilty. On January 3, 1967, Bye was sentenced by Judge Cooper to seven and one-half years on each count, to run consecutively, a total of fifteen years.[2] Bye's direct appeal from his sentence was dismissed by this court as untimely.

Thereafter in May, 1968 Bye brought his first motion under 28 U.S.C. § 2255 alleging that his plea had been induced by improper representations that the sentences would be concurrent. Judge Cooper denied this motion without a hearing and this court affirmed and certiorari was denied. 395 U.S. 949, 89 S. Ct. 2031, 23 L.Ed.2d 469 (1969).

Then on August 5, 1969, Bye brought the present motion in the District Court for the Southern District of New York under 28 U.S.C. § 2255 to vacate the judgment of conviction and sentence entered thereon. He alleged that he was unaware of his ineligibility for parole at the time of his plea, and that if he had known, he would not have pleaded guilty. In a supporting affidavit he claimed that his attorney advised him that he could be paroled in a couple of years and that he based his decision to plead guilty on this advice. Moreover he claimed he felt at the time he pleaded that he had a valid defense of entrapment if he were to go to trial.

Judge Cooper on October 10, 1969, denied the motion without a hearing[3] rely-

---

* District Judge of the Southern District of New York, sitting by designation.

1. Specifically, Judge Tyler made explicit the following effects of a guilty plea: (1) sentencing without a trial; (2) the minimum and maximum sentences on each count; (3) the sentences might not be concurrent; and (4) the plea amounts to an admission of the facts charged.

2. Immediately after sentencing Bye's counsel charged that the Assistant United States Attorney had promised concurrent sentences in return for the guilty plea and that Bye had been so advised. Judge Cooper held a hearing on these charges on January 10, 1967 and held that they were unfounded.

3. Judge Cooper, in addition, noted that Bye's claim in his affidavit "that his at-

ing on United States v. Caruso, 280 F. Supp. 371 (S.D.N.Y.1967), aff'd sub nom. United States v. Mauro, 399 F.2d 158 (2d Cir. 1968), cert. denied, 394 U.S. 904, 89 S.Ct. 1010, 22 L.Ed.2d 215 (1969). We reverse and remand to the district court for a hearing to determine whether Bye entered his plea voluntarily with an understanding that he would be ineligible for parole.

Rule 11 of the Federal Rules of Criminal Procedure, as amended effective July 1, 1966, provides that the court shall not accept a guilty plea "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." Since Bye's guilty plea was accepted on November 29, 1966, we must first decide whether ineligibility for parole is a consequence of the plea about which the district court must address the defendant before accepting his plea.

■ We agree with the position of five other circuits which have held that ineligibility for parole is indeed a consequence of the plea about which a defendant in narcotics cases must be informed under Rule 11. Harris v. United States, 426 F.2d 99 (6 Cir. 1970); Jenkins v. United States, 420 F.2d 433 (10 Cir. 1970); Durant v. United States, 410 F.2d 689 (1 Cir. 1969); Berry v. United States, 412 F.2d 189 (3 Cir. 1969); Munich v. United States, 337 F.2d 356 (9 Cir. 1964). Cf. United States ex rel. Brooks v. McMann, 408 F.2d 823, 825 n. 1, (2 Cir. 1969) (question open in this circuit). We do not follow the contrary view of two circuits. Trujillo v. United States, 377 F.2d 266 (5 Cir.), cert. denied, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed. 2d 221 (1967); [4] Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436 (1963), cert. denied, 376 U.S. 957, 84 S. Ct. 978, 11 L.Ed.2d 975 (1964).[5]

■ It is true that an accused need not be informed prior to the acceptance of his guilty plea about every conceivable collateral effect the conviction entered on the plea might have. See, e. g., Meaton v. United States, 328 F.2d 379 (5 Cir. 1964), cert. denied, 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965) (conviction might result in loss of passport and right to travel abroad); Redwine v. Zuchert, 115 U.S.App.D.C. 130, 317 F.2d 336, 338 (1963) (civilian conviction might result in an undesirable discharge from the Air Force); United States v. Cariola, 323 F.2d 180 (3 Cir. 1963) (conviction might deprive accused of the right to vote in some states); United States v. Parrino, 212 F.2d 919 (2 Cir.), cert. denied, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954) (convic-

torney promised him that he would be eligible for parole in a 'couple of years' is unsound in light of petitioner's open court statement, at the time of entering his plea of guilty, that no promises had been made to him concerning possible sentencing." However, Bye's statement that there were no promises concerning his sentence does not preclude the possibility that his attorney gave him *advice* that he would be eligible for parole. When he pleaded guilty Bye did not disclaim having received advice as to his eligibility for parole. Therefore at the hearing on remand, Bye may adduce proof of the claimed advice by his attorney to substantiate his claim that he did not know of his ineligibility for parole.

4. The Fifth Circuit subsequently indicated while following *Trujillo* that were the question before it for the first time it might have reached a result consistent with the other five circuits. Sanchez v. United States, 417 F.2d 494, 496 (5 Cir. 1969). Then later it confined *Trujillo* to its bare facts and vacated a guilty plea, relying on an incorrect reference by the sentencing judge to availability of parole, even though this reference was made *after* the guilty plea had been accepted so that the petitioner could not have relied on the misinformation in deciding to plead guilty. Spradley v. United States, 421 F. 2d 1043 (5 Cir. 1970).

5. *Smith* is distinguishable from the case at hand since the petitioner there never alleged that he would not have pleaded guilty if he had been informed of his ineligibility for parole. 324 F.2d at 440. If he would have pleaded guilty even if he were informed that he was ineligible, it is hard to see how his alleged expectation of eligibility prejudiced his decision to plead guilty.

tion might subject an alien to deportation).

■ But the unavailability of parole directly affects the length of time an accused will have to serve in prison. If parole is unavailable, the mandatory period of incarceration under a given sentence is three times as long (not taking into account allowances for good time). It would seem that such a major effect on the length of possible incarceration would have great importance to an accused in considering whether to plead guilty. Recent Decision, 41 Temple L.Q. 491, 495 (1968). The purpose of Rule 11 was to insure that an accused is apprised of the significant effects of his plea so that his decision to plead guilty and waive his right to a trial is an informed one. See Brady v. United States, 397 U. S. 742, 90 S.Ct. 1463, 1469 n. 6, 25 L.Ed. 2d 747 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 1446, 25 L. Ed.2d 763 (1970).

It is therefore of no moment that parole generally can be characterized as a legislative grace, and that ineligibility of parole for narcotics offenders could be classified as the withholding of a legislative grace.[6] See Smith v. United States, *supra*, 324 F.2d at 441. Rule 11 is not concerned with the legislative genesis of the ineligibility for parole, but with the extent to which ineligibility for parole could influence an accused's decision whether to plead guilty.

The government makes two arguments that relief should be denied to appellant Bye. First it demonstrates that the actual sentence received by Bye requires a shorter mandatory incarceration than the maximum possible sentence on the two counts even with eligibility for parole. The maximum sentence was forty years and if parole were available, the mini-

mum service under such a sentence would be thirteen and one-third years. Bye received a total sentence of fifteen years, and can be released without parole in just over ten years if he accumulates full credit for good time. See 18 U.S.C. § 4202.

The government thus contends that the actual sentence requires mandatory incarceration well within the range of the perceived mandatory period even if Bye had thought that parole was available. Therefore, Bye's expectations as to his sentence allegedly were not upset by the actual sentence, and mere disappointment with the time he must serve should not entitle him to relief. Smith v. United States, *supra*, 324 F.2d at 440 and 441–442 (concurring opinion). Contra, e. g., Durant v. United States, *supra*, 410 F.2d at 691; Berry v. United States, *supra*, 412 F.2d at 191.

The government's argument that Bye was not prejudiced since his actual mandatory incarceration under his sentence falls within the perceived range of mandatory incarceration periods had parole been available, misconceives the nature of the danger of an accused pleading guilty while unaware of his ineligibility for parole. The danger is that the accused makes his decision to plead guilty underestimating by a factor of three the risk of prolonged mandatory incarceration. If the accused's ineligibility for parole is known to him prior to entering his guilty plea, he may decide not to plead guilty at all in view of the greater perceived risks of lengthy imprisonment. Indeed Bye alleged in his petition that he would not have pleaded guilty had he known that he was ineligible for parole.

Second, the government argues that Bye's claim that he was unaware of his ineligibility for parole is incredible and should be rejected without a hearing.[7]

---

6. Indeed, the legislative history of 26 U.S.C. § 7237(d), which subjected first narcotics offenders to the ineligibility for parole theretofore applicable only to multiple offenders, indicates that Congress intended to impose a more serious punishment on this class of offenders. See gen-

erally H.R.Rep.No.2388, 84th Cong., 2d Sess. (1956).

7. The argument by the government at oral argument that the court below *sub silentio* made a finding that Bye knew he was ineligible for parole by relying on the rea-

The government relies on the fact that Bye made similar claims which were rejected in a prior § 2255 motion [8] (that he was induced to plead by misrepresentations as to whether the sentences would be concurrent), and that he never before this action (two and one-half years after sentencing) claimed that he was unaware of his ineligibility for parole.[9] While the rejection of similar claims and the belatedness of the present claim are relevant to Bye's credibility in alleging he was unaware, they do not make Bye's claim necessarily incredible.

Indeed, Bye's claim may well be found to be credible. It would seem that the availability of parole is generally expected by persons accused in our system. Recent Decision, 41 Temple L.Q. 491, 496 (1968). "Probation and parole are concepts which our society has come to accept as natural incidents of rehabilitation during imprisonment. This is not true where, as here, because of a Congressional directive tucked away in a relatively obscure section of the Internal Revenue Code, a narcotics offender is faced with the unconditional loss of probation and parole." Berry v. United States, *supra*, 412 F.2d at 192.

Moreover, Bye offered evidence of how he became aware of his ineligibility for parole. In a letter to Judge Cooper dated September 26, 1969, he enclosed a copy of the "commitment card" issued to each prisoner which contains a summary of the term of a prisoner's imprisonment. On the line headed: "Elig. for parole" Bye's card read: "NOT."

In any event, since Bye has demonstrated a failure by the district court to comply with Rule 11 in not informing him of his ineligibility for parole, the government must bear the burden of proving that his guilty plea was entered voluntarily with an understanding of the consequences of the plea. Durant v. United States, 410 F.2d 689, 693 (1 Cir. 1969); Munich v. United States, 337 F.2d 356, 360–361 (9 Cir. 1964); see Lane v. United States, 373 F.2d 570, 573, 576 (5 Cir. 1967); Domenica v. United States, 292 F.2d 483, 486 (1 Cir. 1961); Halliday v. United States, 394 U.S. 831, 832, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969); McCarthy v. United States, 394 U.S. 459, 468–469 n. 24, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); George v. United States, 421 F.2d 128, 129 (2 Cir. 1970) (per curiam). The government's arguments based on rejection of similar claims and the belatedness of the claim do not satisfy its burden, especially when Bye had not been granted a hearing on his allegations.[10]

sons set forth in United States v. Caruso, *supra*, in which the district court made a specific finding that petitioner had knowledge, is without merit. In any event, if the district court made such a finding, it would be without support in the record.

8. The government seems to have abandoned its argument below that the present § 2255 motion constitutes an abuse of the writ.

9. Apparently Bye's first claim of record in this regard appeared in his reply brief in his petition for certiorari to the Supreme Court after the denial of his first § 2255 motion, where he claimed that Judge Tyler did not tell him of his ineligibility.

10. We do not read our holding in United States v. Mauro, *supra*, affirming United States v. Caruso, *supra*, as inconsistent with our view that the government must bear the burden of proving that the plea was voluntarily entered with an understanding of the consequences, when the accused was not informed by the court of his ineligibility for parole. There the district court without a hearing made a finding that "Mauro knew full well at the time he pled guilty that he would not be eligible for parole." 280 F.Supp. at 375. Mauro's unsupported allegation that he was unaware at the time of the plea of his ineligibility was belied in the record before the district court by his own statement prior to sentencing, by his obvious awareness of his ineligibility at the time he moved for a reduction of his sentence (shortly after he pleaded guilty) on the ground that he was ineligible for parole, by his own attorney's affidavit stating that the attorney had assumed Mauro was aware of his ineligibility, and by his long record of convictions for various offenses. 280 F.Supp. at 374–375. Given such a record and the absence of an offer by Mauro to substantiate his claim that he was unaware of his ineligibility, it was proper for the district court to find against Mauro's claim without a hearing.

Since Bye's plea was accepted on November 29, 1966, prior to the Supreme Court's holding in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166 (1969) (noncompliance with Rule 11 requires an automatic vacation of the guilty plea), the proper remedy in this case is to remand to the district court for a factual hearing on Bye's claim that at the time he pleaded guilty he was unaware of his ineligibility for parole. Halliday v. United States, *supra*, 394 U.S. at 831, 89 S.Ct. 1498 (per curiam) (*per se* rule of McCarthy, *supra*, applies prospectively to pleas accepted after April 2, 1969) ; George v. United States, 421 F.2d 128 (2d Cir. 1970) (violation of Rule 11 requirement as to understanding of nature of the charge and consequences of the plea).

Reversed and remanded.