**UNITED STATES ex rel. Nancy ROSNER on behalf of Frank Ciapetta, Petitioner,**

v.

**WARDEN, SING SING PRISON, OSSINING, NEW YORK, Respondent.**

No. 74 Civ. 1643.

United States District Court,
S. D. New York.

Sept. 30, 1974.

Nancy Rosner, Alan Scribner, Rosner, Fisher & Scribner, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen., State of New York by Arlene R. Silverman, New York City, for respondent.

## MEMORANDUM OPINION

MOTLEY, District Judge.

*Introduction*

Petitioner in this habeas corpus petition is presently in the custody of the New York prison authorities within the Southern District of New York pursuant to a judgment of conviction entered on June 24, 1955 (Hon. Eugene G. Schulz, Bronx County Court) in which petitioner was sentenced to 20 years to life. Said conviction was founded upon petitioner's plea of guilty to murder in the second degree entered on May 2, 1955. The plea, which is the subject of the present application, was made after the trial of petitioner and four co-defendants for the crime of murder in the first degree had been in progress for two weeks. At all times petitioner was represented by retained trial counsel, Stephen A. Fuschino, Esq.

The essence of petitioner's claim is that his guilty plea was entered without the knowledge of its consequences, hence in violation of due process of law. The basis for this claim is that at the time of pleading, petitioner, although informed of the maximum sentence, mistakenly believed that a minimum sentence in a reformatory was also available. In the alternative, petitioner argues that he was denied the effective assistance of counsel in violation of his Sixth Amendment rights. The basis of this claim is his trial counsel's admitted error in urging the legality of a reformatory sentence despite clear statutory language to the contrary. In opposition, the state contends that the petition should be dismissed for failure to exhaust state remedies. 28 U.S.C. § 2254 (b). On the merits, the state argues that petitioner's plea was compatible with the Constitution; that is, it was freely and voluntarily entered with adequate knowledge of its consequences. For the reasons which follow, the court, after finding exhaustion, agrees with respondent's position that petitioner's plea was constitutionally entered and accordingly denies the petition.

*Exhaustion*

■ While the procedural course of petitioner's claim is somewhat unique, the court is satisfied that the state courts have had a "fair opportunity" to decide the ultimate issue presented. *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

Following his conviction and entry of judgment as noted above, petitioner on August 31, 1955 brought on a motion in the nature of a writ of error *coram nobis,* seeking to vacate judgment of conviction. The ground asserted in that application was, as here, a challenge to the voluntariness of the plea. One of petitioner's co-defendants, Guglielmelli, made a similar application and a hearing on both applications was held on November 4, 1955. The minutes of the hearing *coram nobis* indicate that petitioner decided to plead guilty on the hope of being sentenced to the Elmira Reception Center for a maximum of five years. (Minutes, pp. 21, 22 and 47.) That is, petitioner and Guglielmelli were led to believe that due to their age a reformatory sentence was a possible sentencing alternative (Minutes, pp. 26, 27 and 48.), whereas due to the gravity of the offense, such alternative was not possible (Former N.Y. Penal Law § 1048).

The County Court denied the application of both petitioner and Guglielmelli. The County Court found that the petitioner pled guilty on the representation made by counsel that there was a possibility of obtaining a reformatory sentence, and that such a claim was legally insufficient to invoke the remedial process of *coram nobis*. (Opinion of December 6, 1955 attached to original petition as Exhibit D.)

Following this denial, petitioner filed a notice of appeal on January 13, 1956. Subsequently an agreement was made between petitioner's counsel and the Appeals Bureau of the Bronx County District Attorney's office to the effect that the appeal in petitioner's case would be determined by the decision on appeal in the case of petitioner's co-defendant Guglielmelli. This agreement is evidenced by affidavits by petitioner's appellate counsel on November 12, 1956, and January 4, 1957, submitted in support of petitioner's various requested adjournments. (See Exhibits B and C respectively attached to Amended Petition.) In particular the November 12 affidavit asserts:

"Your deponent is of the opinion that the facts, circumstances and law are identical in both appeals and your deponent has discussed this matter with the Appeals Bureau of the District Attorney's Office: Bronx County and it has been agreed by and between us that the decision of the case of VINCENT GUGLIELMELLI shall be binding upon Appellant herein."

Subsequently the order of the County Court denying *coram nobis* was affirmed as to Guglielmelli. *People v. Guglielmelli*, 5 A.D.2d 815, 170 N.Y.S.2d 986 (1st Dept.), *cert. denied, Guglielmelli v. New York*, 358 U.S. 899, 79 S.Ct. 224, 3 L.Ed.2d 149 (1958). (Additionally leave to appeal to the Court of Appeals of the State of New York was denied by Judge Stanley H. Fuld on March 13, 1958.)

In opposition to petitioner's contention that the above described course satisfies the exhaustion requirement of 28 U.S.C. § 2254(b), respondent argues that petitioner never perfected the appeal of the denial of *coram nobis* on December 6, 1955 and that indeed on May 16, 1957 the appeal he had initiated was dismissed for lack of prosecution. According to respondent, the affidavits, by his appellate counsel on which petitioner relies were treated simply as requests for extensions, and thus petitioner mistakenly relies on the agreement that the disposition of the *Guglielmelli* case would be controlling. Respondent further notes that Guglielmelli's briefs on appeal make no representation as to what petitioner's understanding was, thus the state has not had an opportunity to decide the issues as to petitioner.

The court notes that, contrary to respondent's position, defendant Guglielmelli and petitioner were both represented by the same trial counsel and it is the constitutional significance of trial counsel's advice given to both defendants which was at issue in Guglielmelli's collateral proceedings. See *United States ex rel. Figueroa v. McMann*, 411 F.2d 915 (2d Cir. 1969). Further, as the above description makes clear, petitioner relied on the agreement reached between his appellate counsel and the state's authorized agents. In the court's opinion, the state is now estopped from arguing that petitioner has failed to exhaust when his failure was due to reasonable reliance on the agreement that the disposition as to Guglielmelli would be binding as to petitioner. The court notes that nowhere does respondent challenge the existence of said agreement.

Finally the court notes that while petitioner admittedly and without explanation failed to directly appeal his state court conviction, a motion to vacate judgment at this time would be futile. N.Y.C.P.L. § 440.10-2(c), McKinney's Consol. Laws, c. 11-A. In light of petitioner's efforts to raise the present is-

sue before the state courts, both in his own name and in the case bearing that of Guglielmelli, the court cannot characterize petitioner's failure to appeal directly as a deliberate bypass of state procedures. *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

*Voluntariness of the Plea*

On the merits, it is petitioner's contention that his plea was involuntarily entered, and hence in violation of due process, in that he did not fully understand the consequences of his plea. *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). Just as the current standard as to voluntariness in federal cases, as found in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) was not made retroactive *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), the Court of Appeals for the Second Circuit refused to treat the state counterpart, as found in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), retroactively. *United States ex rel. Rogers v. Adams,* 435 F.2d 1372 (2d Cir. 1970), *cert. denied,* 404 U.S. 834, 92 S.Ct. 115, 30 L.Ed.2d 64, *rehearing denied,* 404 U.S. 996, 92 S.Ct. 538, 30 L.Ed.2d 548 (1971). Nevertheless, "a state prisoner who believes himself aggrieved by a plea proceeding and who raises a sufficiently credible challenge to the voluntary nature of his plea, may have a federal hearing." 435 F.2d at 1375. Here, however, the court finds petitioner's challenge to the voluntariness and intelligence of his plea insubstantial and declines to hold a hearing.

The essence of petitioner's claim is that when he entered his plea he was laboring under the mistaken belief that there existed a shorter reformatory sentence as an alternative to the twenty years to life term about which he was concededly aware. This false impression was created by counsel's advice and his reference to an unresponsive letter from the warden of the Elmira Reformatory

regarding the availability of a reformatory sentence. The trial court at all times doubted the legality of a reformatory sentence, and consequently entered into no sentencing promises with trial counsel. The trial court did, however, encourage trial counsel to investigate the availability of the reformatory sentencing alternative, noting that petitioner was then 17 years old.

For petitioner's argument that his plea was involuntarily entered to be persuasive, the court would have to accept the proposition that voluntariness and knowledge of the consequences of a plea can only be satisfied if the defendant knows both the maximum *and* minimum time that might be served in satisfaction of the judgment. This the court declines to do. It is well established that the "maximum" sentence one might get is a consequence about which, under due process standards, a defendant must be informed. *Marvel v. United States,* 380 U.S. 262, 85 S.Ct. 953, 13 L.Ed.2d 960 (1965) (per curiam); *United States ex rel. Leeson v. Damon,* 496 F.2d 718 (2d Cir. 1974). *Jones v. United States,* 440 U.S. 466 (2d Cir. 1971) (similarly under Fed.R.Crim.P., Rule 11). Research fails to uncover any authority for petitioner's proposition that knowledge of the minimum is equally essential. The absence of cases is logically the result of the weakness of the claim—defendants petition for redress when they are sentenced to *more* time than they thought possible, not *less.*

Analytically, petitioner's claim is most analogous to a "prediction case," that is, petitioner was induced to plead due to an erroneous assurance of leniency made by defense counsel. Under the circumstances present here, as in other prediction cases, petitioner's plea was not involuntary. *United Staates ex rel. Scott v. Mancusi,* 429 F.2d 104, 108 (2d Cir. 1970), *cert. denied,* 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971); *United States ex rel. Bullock v. Warden,* 408 F.2d 1326, 1330 (2d Cir. 1969), *cert. denied,* 396 U.S. 1043,

90 S.Ct. 688, 24 L.Ed.2d 686 (1970). In sum, an erroneous sentence estimate by defense counsel does not render a plea involuntary.

Petitioner relies on the recent case of *Mosher v. La Vallee*, 491 F.2d 1346 (2d Cir.), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974) in which the granting of a writ of habeas corpus to a state prisoner was affirmed, where the petitioner had been induced to plead guilty based upon the assurances of counsel that the trial judge had promised to give the defendant the minimum sentence, whereas defendant received a greater term and most importantly no such promise had in fact been made. Petitioner's reliance on *Mosher* is misplaced, since his claim is not one founded on a judge's promise, but rather seen in a light most favorable to petitioner a misrepresentation as to the trial judge's view of the availability of a sentencing alternative. In the court's view, such misrepresentation cannot be equated with a promise of a minimum or lenient sentence.

Petitioner would also have the court rely on *Bye v. United States*, 435 F.2d 177 (2d Cir. 1970) in which the district court was instructed to hold an evidentiary hearing on whether the petitioner knew at the time of his guilty plea that as a narcotics offender he would be ineligible for parole. The Second Circuit expressed the view that such ineligibility was a consequence of the plea about which a defendant must be informed. 435 F.2d at 179. While the *Bye* case and the present one both involve the length of time an accused will have to spend in prison, they are distinguishable. The focus of *Bye* was on the risk of lengthy imprisonment. Under *Bye* a defendant is entitled to have accurate information when computing the opportunity, or lack thereof, for release *prior* to completion of sentence. The instant case is not concerned with the mathematics of such risks while serving a sentence. Instead it is concerned with the absolutes of the availability of sentencing alternatives *ab initio*.

*Effective Assistance of Counsel*

Petitioner's final claim is that his plea should be vacated because he was denied the effective assistance of counsel. The court notes that when a defendant enters a guilty plea he waives the right to trial and "assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts." *McMann v. Richardson*, 397 U.S. 759, 774, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763 (1970). Further, "erroneous advice by defense counsel as to sentence does not support attack . . . unless it amounts to 'ineffective assistance of counsel . . . .'" *United States v. Horton*, 334 F.2d 153, 155 (2d Cir. 1964) (relief sought under 28 U.S. C. § 2255). The requirements for establishing inadequacy of counsel are stringent, *United States ex rel. Marcelin v. Mancusi*, 462 F.2d 36, 42 (2d Cir. 1972) (cases collected), *cert. denied*, 410 U.S. 917, 93 S.Ct. 977, 35 L.Ed.2d 279 (1973) and under the present facts, petitioner has failed to carry his burden of proving the claimed ineffectiveness.

Petitioner argues that trial counsel's insistence on the legality of a reformatory sentence is conclusive proof of his ineffectiveness, since the statute relating to reformatory sentencing specifically excluded male persons convicted of "crimes punishable by death or life imprisonment" (former N.Y. Penal Law § 2184–a) and the punishment for murder in the second degree was then from twenty years to the "offender's natural life" (former N.Y. Penal Law § 1048). Petitioner claims that trial counsel's failure to read or understand the plain meaning of the relevant statutes and to accurately convey their purport to defendants amounted to ineffectiveness. The court can find no logical explanation for counsel's failure to appreciate the impossibility of a reformatory sentence in light of a plea of guilty to murder in the second degree. However, insofar as petitioner had been appraised

of the maximum sentence and his plea has been found to be voluntary, the trial proceedings do not shock the conscience of the Court, nor were they a "farce and mockery of justice", *United States v. Wight,* 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied,* 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950) (citations omitted). While counsel's error is unexplained, it can hardly be said that his representation was so "horribly inept" as to amount to "a breach of his legal duty faithfully to represent his client's interests", *United States ex rel. Scott v. Mancusi,* 429 F.2d 104, 109 (2d Cir. 1970), *cert. denied,* 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971) (quoting other sources).

For the reasons noted above, the petition is dismissed.

So ordered.